**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

LAURA A. OWENS,                          :
individually and on behalf of a          :
class of all others similarly situated   :
                                         :
      Plaintiffs,                  :    CIVIL ACTION NO.
                                         :    2:14-CV-00074-RWS
      v.                           :
                                         :
METROPOLITAN LIFE                        :
INSURANCE COMPANY,                       :
                                         :
      Defendant.                   :

## <u>ORDER</u>

This case comes before the Court on Defendant's Rule 12(b)(6) Motion

to Dismiss Plaintiff's Complaint [25].  After a review of the record, the Court

enters the following Order.

### **Background**[1]

This case arises out of Metropolitan Life Insurance Company's

("MetLife") administration of life insurance death benefits paid on employee

benefit plans.  On April 17, 2014, Plaintiff Laura Owens, on behalf of herself

---

[1] As the case is before the Court on a Motion to Dismiss, the Court accepts as true the facts alleged in the complaint.  <u>Cooper v. Pate</u>, 378 U.S. 546, 546 (1964).

and of a class of all others similarly situated, brought this action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Plaintiff Laura Owens is the beneficiary of a life insurance policy that provided $95,000.00 in coverage on her husband's life (the "Policy"). (Compl., Dkt. [1] ¶¶ 7-9.) Owens's husband, Robert F. Owens, was employed prior to his death on April 7, 2012 by CB Richard Ellis, Inc. and was a participant in the CB Richard Ellis Group Insurance Plan (the "Plan"). (Id. ¶ 9.) The Policy provides, "We will pay the Life Insurance in one sum. Other modes of payment may be available upon request." (Id. ¶ 10.)

On or around May 21, 2012, CB Richard Ellis, Inc., submitted a claim for life insurance benefits on Plaintiff's behalf. (Id. ¶ 11.) MetLife approved the claim and established a "Total Control Account" in Owens's name (the "TCA"). (Id. ¶ 12.) MetLife provided a "book of blank drafts" to Plaintiff, which allowed her to withdraw funds from the TCA in increments of $250 or more. (Id.) The TCA accrued interest at a rate tied to one of two indices; the rate fluctuated weekly but the annual effective interest rate was no lower than 0.50%. (Id. ¶ 13.)

2

MetLife's practice is to hold payable benefits in its own general account until called upon to transfer funds to cover drafts drawn on "Total Control Accounts." (Id. ¶ 15.) This practice extended to the benefits paid on Plaintiff's claim. MetLife established a TCA for Ms. Owens, paying interest at the rate of 0.50%. (Id. ¶ 16.) The funds remained in MetLife's general account, earning interest for MetLife at a higher rate than that paid to Plaintiff. (Id.)

This practice is the basis of Plaintiff's Complaint. Plaintiff alleges that MetLife profited from "investing [Plaintiff's] benefits for its own account." (Id. ¶ 17.) Plaintiff further alleges that MetLife did not disclose that profit or similar profits to Ms. Owens or to the Plan's sponsor or administrator. (Id. ¶ 18.) Plaintiff claims that this conduct constitutes a breach of fiduciary duty.

Plaintiff alleges that MetLife routinely profits in this manner from plan benefits paid on group life insurance policies. (Id. ¶¶ 19-25.) Plaintiff claims that this practice violates the terms of the payment clauses in these policies, which provide "We will pay the Life Insurance in one sum. Other modes of payment may be available upon request." (Id. ¶ 20.) Plaintiff alleges that MetLife's profits as a result of this practice total between $100 million and $300 million annually. (Id. ¶ 25.)

3

Plaintiff claims she exhausted her administrative remedies when, on or around November 21, 2013, Plaintiff submitted a claim on the Policy to MetLife.  (Id. ¶¶ 26-28.)  MetLife did not respond to Plaintiff's claim within 90 days, as required by the ERISA addenda to the Plan's Certificates of Insurance. (Id.)

Plaintiff now brings her claims pursuant to ERISA on behalf of herself and the class of others similarly situated.[2]  Plaintiff further brings claims on behalf of a subclass of Georgia residents.  Plaintiff claims that MetLife functioned as a fiduciary when it engaged in the conduct described above.  (Id. ¶ 31.)  Further, Plaintiff claims that MetLife is a party in interest to the Plan. (Id. ¶¶ 36-37.)  On those bases, Plaintiff brings the following causes of action: breach of the duty of loyalty imposed by ERISA § 404(a)(1)(A) (Count I); breach of the fiduciary duties imposed by ERISA § 406(b)(1) (Count II), § 406(a)(1)(B) (Count III), and § 406(a)(1)(C) (Count IV); declaratory relief regarding coverage by state insurance guaranty funds for the Georgia subclass (Count V); and postmortem interest for the Georgia subclass (Count VI).

---

[2]  The Court does not address class certification in the present Order. Plaintiff's Motion to Certify Class has not yet been fully briefed before the Court. (See Dkt. [7].)

AO 72A
(Rev.8/82)

Defendants now move to dismiss the Complaint on grounds that Plaintiff does not have standing to sue and that her claims fail as a matter of law (Def.'s Rule 12(b)(6) Mot. to Dismiss Pl.'s Compl. ("Def.'s Mot. to Dismiss"), Dkt. [25]).  Plaintiff responds in opposition.  (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp."), Dkt. [30].)  As an initial matter, Defendant's request for oral argument (Def.'s Reply in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply"), Dkt. [35] at 20) is **DENIED**.  The Court now considers the parties' arguments in turn.

## Discussion

## I.    Legal Standard - Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

5

Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face

when the plaintiff pleads factual content necessary for the court to draw the

reasonable inference that the defendant is liable for the conduct alleged.  Id.

At the motion to dismiss stage, "all-well pleaded facts are accepted as

true, and the reasonable inferences therefrom are construed in the light most

favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273

n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set

forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260

(11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as

true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at

555.

"The district court generally must convert a motion to dismiss into a

motion for summary judgment if it considers materials outside the complaint."

D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also FED. R.

CIV. P. 12(d).  However, documents attached to a complaint are considered part

of the complaint.  FED. R. CIV. P. 10(c).  Documents "need not be physically

attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim. <u>D.L. Day</u>, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed." <u>Id.</u> (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed' means that the authenticity of the document is not challenged." <u>Id.</u>

## II.    <u>Discussion</u>

Defendant moves to dismiss the Complaint in its entirety.  In support of its Motion, Defendant argues that Plaintiff's claims fail as a matter of law and that Plaintiff lacks standing to bring her claims.  The Court first addresses the issue of standing before turning to the sufficiency of Plaintiff's allegations.

### A.    <u>Standing</u>

In order to proceed with her claims, Plaintiff must have both Article III standing and a cause of action under ERISA.  The Court considers both requirements in turn.

7

1.    *Constitutional standing*

Article III of the Constitution confines the reach of federal jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  This limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded."  Allen v. Wright, 468 U.S. 737, 750 (1984); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1990) (describing how standing interfaces with separation of powers and breadth of judicial power).  These values are reflected in the three required elements for constitutional standing:  (1) "an 'injury in fact'–a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical;' " (b) "causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) "redressability–a likelihood that the requested relief will redress the alleged injury."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04, (1998); see also Vt. Agency of Natural Res. v. United States ex rel Stevens, 529 U.S. 765, 771 (2000); 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003).

"[W]hen a question about standing is raised at the motion to dismiss stage, 'it may be sufficient to provide general factual allegations of injury

8

resulting from the defendant's conduct.' "   Bochese v. Town of Ponce Inlet,

405 F.3d 964, 975 (11th Cir. 2005) (quoting Fl. Pub. Interest Research Grp. v.

EPA, 386 F.3d 1070, 1083 (11th Cir. 2004)) (internal quotations omitted).

Defendants move for dismissal on grounds that Plaintiff has failed to allege any

injury-in-fact.  (Def.'s Mem. of Law in Support of Def.'s Mot. to Dismiss

("Def.'s Mem."), Dkt. [25-1] at 28-29.)  The Court finds this contention

unavailing as to Counts I, II, III, IV, and VI, and concludes that Plaintiff has

met her pleading burden for constitutional standing on those claims.  But the

Court finds that Plaintiff has failed to meet her burden with respect to her

request for a declaratory judgment in Count V.

      While 28 U.S.C. § 2201 allows courts to "declare the rights and other

legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought" in a case of actual controversy within its

jurisdiction, the Supreme Court has "recognized the potential for declaratory

judgment suits to fall outside the constitutional definition of a 'case' in Article

III.  Calderon v. Ashmus, 523 U.S. 740, 746 (1998).  Accordingly, in the

context of declaratory judgments, a controversy must allow for "specific relief

through a decree of a conclusive character, as distinguished from an opinion

9

advising what the law would be upon a hypothetical state of facts." Id. (quoting

Aetna Life Ins. v. Haworth, 300 U.S. 227, 241 (1937)).

Plaintiff asks the Court to decide "whether ERISA plan assets that

MetLife lends to itself and labels as Total Control Accounts are, in case of

default, covered by the Georgia Life and Health Insurance Guaranty

Association." (Compl., Dkt. [1] ¶ 95.)  Plaintiff does not allege that MetLife

has defaulted or is likely to default on these accounts.  (See Pl.'s Resp., Dkt.

[30] at 32 (conceding that "Ms. Owens has not alleged that a default is

imminent").)  Accordingly, judgment on this issue would not resolve the case or

controversy underlying this action, and would instead offer an advisory opinion.

"As is well known the federal courts established pursuant to Article III of the

Constitution do not render advisory opinions." United Pub. Workers of Am.

(C.I.O.) v. Mitchell, 330 U.S. 75, 89 (1947).  Count VI of the Complaint is,

therefore, **DISMISSED**.

> ### 2.   *ERISA standing*

Constitutional standing is a threshold inquiry.  Once Article III's

requirements are satisfied, a plaintiff must show that Congress has created a

right of action, either expressly or by clear implication, such that the plaintiff

has basis for relief.  See Warth v. Seldin, 422 U.S. 490, 501 (1975).

Accordingly, in addition to the requirements of constitutional standing

discussed above, Plaintiffs in ERISA suits must have standing under the

statutory scheme as well.  See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585,

591 (8th Cir. 2009); Leuthner v. Blue Cross & Blue Shield of Ne. Pennsylvania,

454 F.3d 120, 125 (3d Cir. 2006) ("To bring a civil action under ERISA, a

plaintiff must have constitutional, prudential, and statutory standing.").

"Prudential" limits require that "a plaintiff's grievance must arguably fall within

the zone of interests protected or regulated by the statutory provision . . .

invoked in the suit."  Bennett v. Spear, 520 U.S. 154, 162 (1997).  In ERISA

cases, this requirement is explicitly met if the plaintiff is a "participant" or

"beneficiary" under 29 U.S.C. § 1132(a).  Plaintiff alleges that she is the

beneficiary of the life insurance coverage afforded by her husband's ERISA-

governed Plan and Policy.  (Compl., Dkt. [1] ¶ 9.)

 The Court concludes that Plaintiff has made a sufficient showing at this

stage of the litigation to satisfy all standing requirements.  Defendant's statutory

standing arguments rest primarily on the contention that Plaintiff does not meet

ERISA's definition of "beneficiary" because she was entitled to no further

benefits under the Plan at the time she commenced this action.  (Def.'s Mem., Dkt. [25-1] at 30.)  The Court rejects this contention.  To divest standing from Plaintiff, a beneficiary (at least at one time) who brings suit claiming that a fiduciary has violated its duties under ERISA, would thwart Congress's goal of permitting wronged beneficiaries from seeking relief.[3]  The question of statutory standing turns, after all, on whether the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  Warth, 422 U.S. at 500.  Plaintiff has alleged that she is a beneficiary under ERISA, a statutory scheme that explicitly provides plaintiffs in that position a right to seek relief.  Plaintiff's ERISA claims, therefore, are not due to be dismissed for lack of standing.

---

[3]  This comports with the approach taken by the majority of circuits to "participant" standing.  These courts "have developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a 'participant' in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach."  Swinney v. Gen. Motors Corp., 46 F.3d 512, 518-19 (6th Cir. 1995) (collecting cases).  Similarly, here Plaintiff challenges the manner in which Defendant has paid her benefits due under the Plan. Permitting Defendant to avoid adjudication of its method of payment by simply stating that the benefits have already been paid allows Defendant to avoid the causes of action specifically intended by ERISA.  See id. ("Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan. ERISA should not be construed to permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner.").

B.   Failure of Plaintiff's claims as a matter of law

The Court now turns to Defendant's contention that Plaintiff's claims should be dismissed because they fail as a matter of law.  Under the pleading standard discussed above, Plaintiff's claims are due to be dismissed only if relief is implausible under the facts *as alleged in the Complaint.*  "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir.2007) (quoting Twombly, 550 U.S. at 556).  At this stage in the proceedings, the Court must accept that Plaintiff will be able to prove her allegations.

Defendant relies on authority from the First, Second, and Third Circuits to argue that, as a matter of law, MetLife discharged its fiduciary duties when it established a TCA for Plaintiff.  (See Def.'s Mem., Dkt. [25-1] at 11-13 (citing Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46 (1st Cir. 2014); Edmondson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406 (3d Cir. 2013); Faber v. Metropolitan Life Ins. Co., 648 F.3d 98 (2d Cir. 2011).)  Defendant argues that a TCA is a permissible form of "payment" under those cases and other persuasive authority.  (See also Def.'s Reply, Dkt. [35] at 3-4.)

13

But the relevant question before the Court is not whether a TCA constitutes "payment," but whether Plaintiff has alleged sufficient facts to support her allegation that Defendant breached its fiduciary duty under the Plan and Policy.  The language of the Policy at issue here promises that MetLife will make payment "in one sum."  (Compl., Dkt. [1] ¶ 10.)  Accordingly, the Policy's language in this case differs from the policy language in the cases relied upon by Defendant,[4] and instead more closely resembles the language at

---

[4] The policies at issue in <u>Faber</u> provided for payment by MetLife's Total Control Account under circumstances specified in the policies.  <u>Faber v. Metro. Life Ins. Co.</u>, 648 F.3d 98, 100 (2d Cir. 2011).  The policy in <u>Edmondson</u> did not state how the insurer was to pay the benefits.  <u>Edmonson v. Lincoln Nat. Life Ins. Co.</u>, 725 F.3d 406, 411 (3d Cir. 2013) <u>cert. denied</u>, 134 S. Ct. 2291 (2014).  The policy at issue in <u>Merrimon</u> explicitly provided "If you or your dependent's life claim is at least $10,000, Unum will make available to the beneficiary a retained asset account (the Unum Security Account)."  <u>Merrimon v. Unum Life Ins. Co. of Am.</u>, 845 F. Supp. 2d 310, 313 (D. Me. 2012) <u>aff'd in part, rev'd in part and remanded</u>, 758 F.3d 46 (1st Cir. 2014).  In <u>Phillips</u>, the policy "provided that the beneficiary 'may choose to have any death benefit paid in a single sum.'  Also, under the policy, the insured could choose from five other optional methods of settlement in the form of installment payments for a fixed period, life income, interest payment (the Alliance Account), installments for a fixed amount, and non-participating income."  <u>Phillips v. Prudential Ins. Co. of Am.</u>, No. 11-CV-0058-DRH, 2011 WL 5915148, at *1 (S.D. Ill. Nov. 28, 2011) <u>aff'd</u>, 714 F.3d 1017 (7th Cir. 2013).  Finally, the policy in <u>Clark</u> provided "Unless otherwise requested, we may pay the insurance proceeds when the insured dies, or the cash value on surrender of the policy in one sum, or by placing the amount in an account that earns interest. The payee will have immediate access to all or any part of the account."  <u>Clark v. Metro. Life Ins. Co.</u>, No. 3:08-CV-00158-LRH, 2010 WL 3636194, at *2 (D. Nev. Sept. 10, 2010) <u>aff'd</u>, 461 F. App'x 538 (9th Cir. 2011).

14

issue in <u>Mogel v. Unum Life Insurance Co.</u>, 547 F.3d 23 (1st Cir. 2008).

In <u>Mogel</u>, the First Circuit held that delivery of a checkbook did not constitute the "lump sum payment" called for by the life insurance policies. 547 F.3d at 26.  The <u>Mogel</u> court further held that the insurer had not discharged its fiduciary duty when it set up security accounts and mailed checkbooks to beneficiaries while retaining control of the funds represented by the checkbooks and use of those funds for its own benefit.  <u>Id.</u>

The Eleventh Circuit has not considered whether creation of an account like the TCA at issue here constitutes payment of policy proceeds "in one sum." <u>Garrison v. Jackson National Life Insurance Co.</u>, 908 F. Supp. 2d 1293, 1298 (N.D. Ga. 2012) (O'Kelley, J.).  But the court in <u>Garrison v. Jackson National Life Insurance Co.</u> held that the complaint adequately alleged that the insurer breached the policy's requirement of payment "in one sum" where it established a beneficiary account, similar to the TCA here, in the designated beneficiary's name.  908 F. Supp. 2d at 1299.  Based on that decision, and on the First Circuit's reasoning in <u>Mogel</u>, this Court cannot conclude at this stage of the litigation that Plaintiff's claims fail as a matter of law.  The language in this Policy differs significantly enough from the policies in the cases cited by

15

Defendant that further factual development of the record is required before the Court can determine the issues Defendant asks the Court to decide here.

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Counts I, II, III, IV, and VI.

## Conclusion

Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint [25] is **GRANTED IN PART** and **DENIED IN PART**.  Count VI is **DISMISSED** for lack of standing.  The parties are **DIRECTED** to confer regarding the schedule for the balance of the briefing due on Plaintiff's Motion to Certify Class [7].

**SO ORDERED**, this   14th   day of April, 2015.

**RICHARD W. STORY**
United States District Judge

16